STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                            <u>For Online Publication Only</u>
---------------------------------------------------------------X
DANIELLE MARIE HAGLICH,

                       Plaintiff,

         -against-                                    **<u>MEMORANDUM AND ORDER</u>**
                                             17-CV-04775 (JMA)
ANDREW SAUL,[1]
*Commissioner of Social Security*,

                     Defendant.
---------------------------------------------------------------X
**APPEARANCES**

       John W. DeHaan
       The DeHaan Law Firm P.C.
       300 Rabro Drive East, Suite 101
       Hauppauge, NY 11788
       *Attorney for Plaintiff*

       Prashant Tamaskar
       United States Attorney's Office
       Eastern District of New York
       271 Cadman Plaza East, 7th Floor
       Brooklyn, NY 11201
       *Attorney for Defendant*

**AZRACK, United States District Judge:**

      Plaintiff Danielle Marie Haglich ("Plaintiff") seeks review of the final determination by

the Commissioner of Social Security, reached after a hearing before an administrative law judge,

denying Plaintiff disability insurance benefits under Title II of the Social Security Act (the "Act").

The case is before the Court on the parties' cross-motions for judgment on the pleadings. (ECF

Nos. 17, 19.) For the reasons discussed herein, Plaintiff's motion for judgment on the pleadings

is DENIED, and the Commissioner's cross-motion is GRANTED.

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

# I.    BACKGROUND

## A.  Procedural History

On October 9, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability as of March 27, 2012 due to migraine headaches and pain from fibromyalgia.  (Tr. 240–241.[2])  Following denial of her application on January 16, 2014, Plaintiff requested a hearing and appeared with her attorney for hearings before Administrative Law Judge Ronald L. Waldman ("ALJ Waldman") on August 3, 2015 and January 13, 2016.  (Tr. 57–139.)  At the January 13, 2016 supplemental hearing, Plaintiff amended her alleged onset date to August 6, 2014.  (See Tr. 102.)

In a decision dated January 29, 2016, ALJ Waldman denied Plaintiff's claim.  (Tr. 15–28.) Following the five-step process described below pursuant to 20 C.F.R. § 404.1520, ALJ Waldman determined that although Plaintiff suffers from the severe, non-listing level impairment of migraine headaches, she was not disabled under the Act because she retained the residual functional capacity ("RFC") to perform the full range of work at all exertional levels, except that she (1) would be off task eight percent of the workday; and (2) would miss one day of work in a one-month period.  (Tr. 23.)  Based on this RFC and the hearing testimony from a vocational expert, ALJ Waldman determined that Plaintiff was capable of performing her past relevant work as a sleep technician and medical assistant.  (Tr. 28.)  Accordingly, ALJ Waldman concluded that Plaintiff was not under a disability as defined by the Act from August 6, 2014 through December 31, 2015.  (Id.) Plaintiff filed a timely request for review before the Appeals Council.  (Tr. 239.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 21, 2017.  (Tr. 1–6.)  This appeal followed.  (ECF No. 1.)

---

[2] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 22.)

**B.  Plaintiff's Background and Testimony**

Plaintiff was born on September 9, 1976 and was 37 when she filed the instant application for disability insurance benefits.  (Tr. 252.)  Plaintiff indicated that she has a college education and worked as a medical assistant from 1994 to 2010 and as a sleep technician from 2008 to 2012.  (Tr. 63–64.)

At an administrative hearing held on August 3, 2015, Plaintiff testified that she stopped working in 2010 due to migraine headaches and fibromyalgia.  (Tr. 65–69.)  She had pain in her arms, neck, and parts of her lower back and had migraines four to five times per week, with each migraine lasting approximately four to five hours.  (Tr. 68, 70, 81.)  She received Botox injections every two to three months, which reduced the frequency of her migraines to one to two times per week, with each migraine lasting two hours.  (Tr. 94–95.)  Plaintiff testified that she might be able to lift ten pounds on a good day and five pounds on a bad day.  (Tr. 86, 111.)  She could push very lightly but not pull.  (Tr. 86.)  She reported no walking limitations, although on a bad day she might have to stop more frequently.  (Tr. 86, 111.)  She reported trouble taking care of her personal needs, but was able to perform light housework, such as washing dishes, cleaning the floors, and doing laundry on good days.  (Tr. 86–88.)  She also testified that she and her family drive 18-20 hours to Disney World every year, with Plaintiff driving an hour or two each way.  (Tr. 114–115.)  At Disney World, she was able to go on easy rides, but at times had to stay in the hotel because she was not feeling well.  (Tr. 90–91.)  She also reported that she takes her son to the movies and extracurricular activities, socializes with her friends, and rides her bike around the neighborhood.  (Tr. 92–94.)

### C. **Relevant Medical Evidence**

#### a. **Dr. Kavini Mehta, M.D.**

On July 19, 2011, Plaintiff's rheumatologist, Dr. Kavini Mehta, filled out a "Fibromyalgia Disability Questionnaire" and opined that Plaintiff met the American Rheumatological Criteria for fibromyalgia, noting that Plaintiff had diffuse myalgia and arthralgia. (Tr. 514–520.) Dr. Mehta noted that Plaintiff complained of daily and constant pain in her cervical spine, chest, shoulders, arms, hips, and legs. (Tr. 515.) Dr. Mehta opined that Plaintiff could sit for eight hours, stand or walk for three to four hours in an eight-hour workday, could occasionally lift and carry up to ten pounds, had limitations using her upper extremities, and had postural limitations. (Tr. 515–519.) On November 14, 2013, Dr. Mehta examined Plaintiff and observed ten tender points above her waist. (Tr. 470.) Dr. Mehta diagnosed fibromyalgia but noted that Plaintiff's joints did not have any inflammation and exhibited good ranges of motion. (Tr. 473.) On January 2014, Dr. Mehta completed a questionnaire and opined that Plaintiff could stand or walk less than two hours per day, sit less than six hours per day, and could not push or pull more than five pounds. (Tr. 476.)

#### b. **Dr. Teresa Farrugia, D.O.**

In May 2014, Plaintiff began treating with neurologist Dr. Teresa Farrugia for body pain and headaches. (Tr. 479–481.) She complained of headaches and pain, mostly in her upper extremities. (See Tr. 495, 542–544, 569, 495.) Dr. Farrugia prescribed Topamax for her migraines and fibromyalgia and indicated that she would also order Botox injections for Plaintiff. (Tr 481.)

Following examinations on 6/17/14, 7/19/14, 9/16/14, and 10/19/15, Dr. Farrugia reported that the Botox injections have been "helping, with headaches much less frequently." (Tr. 533, 543, 539, 569.) Plaintiff also stated that the Topamax was helping with her body pain. (Tr. 542.) Plaintiff's physical examinations were generally normal, showing no motor or sensory issues,

except that her reflexes were 2+/4 bilaterally in all of her extremities.  (Tr. 543, 533, 496.)  Dr. Farrugia assessed "migraine headaches, occurring daily, at least 4 hours with nausea [and] photophobia."  (Tr. 543, 496.)  The record does not contain a medical opinion concerning Plaintiff's functional limitations from Dr. Farrugia.

### c. Dr. Bruce Stein, M.D.

In August 2014, Plaintiff began treating with rheumatologist Dr. Bruce Stein.  (Tr. 522–523.)  Dr. Stein noted that Plaintiff "presents with fibromyalgia" with "[s]ymptoms include[ing] widespread pain, regional pain, diffuse tenderness, generalized fatigue, arthralgia, joint stiffness, difficulty falling asleep, and headaches."  (Tr. 522.)  On physical examination, Plaintiff was in no acute distress and her cervical and thoracic spine had moderate tenderness upon palpation.  (Tr. 522–523.)  All other examination results were normal: her elbows, shoulders, wrists, hands, hips, knees, ankles, feet, and phalanges showed no tenderness to palpation, no pain, no swelling or edema, no limitation in ranges of motion, no instability, and no crepitus.  (Tr. 523.)  Dr. Stein assessed fibromyalgia and noted that Plaintiff had a long history of fibromyalgia treatment and had taken multiple medications without relief.  (Tr. 523.)  He recommended that Plaintiff continue on her current treatment.  (Id.)

Treatment notes from Plaintiff's subsequent appointments with Dr. Stein revealed nearly identical findings.  (See Tr. 521, 524–525, 526–527, 528–29, 530, 571–573, 574–576.)  Physical examinations were normal other than moderate tenderness to palpation of the cervical and lumbosacral spine, and Dr. Stein continued diagnosing fibromyalgia and recommending that Plaintiff continue with her current treatment.  (See Tr. 503–505, 521, 524–30, 571–573, 574–576.)

On July 22, 2015, Dr. Stein completed a "Fibromyalgia Residual Functional Capacity Questionnaire."  (Tr. 498–502.)  Dr. Stein indicated that Plaintiff met the American College of

Rheumatology criteria for fibromyalgia and that she also had migraines. (Tr. 498.) He noted "multiple tender points in upper and lower extremities" and in the "cervical and lumbosacral spine." (Id.) Dr. Stein found that Plaintiff had the following symptoms of fibromyalgia: multiple tender points, non-restorative sleep, chronic fatigue, morning stiffness, muscle weakness, frequent and severe headaches, premenstrual syndrome, numbness and tingling, anxiety, panic attacks, hypothyroidism, and chronic fatigue syndrome. (Id.) He also noted that Plaintiff had pain bilaterally in her lumbosacral, cervical, and thoracic spine, as well as pain in her shoulders, arms, hips, and legs. (Tr. 499.) Dr. Stein opined that Plaintiff's pain was severe enough to interfere with memory and concentration and that she's incapable of tolerating low stress jobs. (Id.)

Dr. Stein also noted that Plaintiff could walk three to four city blocks without rest or severe pain, sit and stand for thirty minutes each at one time and less than two hours each in an eight-hour workday, will need to walk around every fifteen minutes for approximately ten minutes each time, and would need unscheduled breaks of fifteen minutes every thirty minutes. (Tr. 500–501.) Dr. Stein further opined that Plaintiff could: (1) occasionally lift and carry less than ten pounds but never more; (2) can never twist, stoop, crouch or squat, climb ladders or stairs; (3) can occasionally look down and up, turn her head to the side, and hold her head in a static position; (4) and can use her hands for grasping and turning or twisting, use her fingers for fine manipulation; and (5) use her arms for reaching overhead, but only between 20-25% each of a workday. (Tr. 501.) Dr. Stein also estimated that Plaintiff would be absent from work more than four days per month. (Tr. 500.)

### d. Dr. Osvaldo Fulco, M.D.

On September 26, 2015, Dr. Osvaldo Fulco, a non-examining medical expert, reviewed Plaintiff's medical record and completed an interrogatory. (Tr. 554–564.) Dr. Fulco opined that Plaintiff's impairments did not meet a listed impairment, particularly for fibromyalgia, because of

6

the lack of tender points below Plaintiff's waist.  (Tr. 557.)  Dr. Fulco also opined that Plaintiff could frequently lift and carry up to ten pounds; sit for 30 minutes at one time and four hours total in an eight-hour workday; stand for fifteen minutes at one time and one hour total in an eight-hour workday; walk for fifteen minutes at one time and one hour total in an eight-hour workday; reach overhead, push and pull, and operate foot controls occasionally; reach in all other directions and handle frequently; and finger and feel continuously.  (Tr. 559–561).  Plaintiff could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, but could never climb ladders or scaffolds.  (Tr. 563).  He also opined that Plaintiff could shop, travel and walk independently, use public transportation, prepare simple meals, care for her personal hygiene, and work with paper or files.  (Tr. 564.)

### e.  Dr. Jerome Caiati, M.D.

On May 28, 2015, Plaintiff underwent a consultative examination with Dr. Jerome Caiati.  (Tr. 484–486.)  On physical examination, Plaintiff was in no acute distress, had a normal gait, could walk on her heels and toes without difficulty, could fully squat, had normal station, and needed no help getting on and off an examination table or rising from a chair.  (Tr. 485.)  She had normal motor activity in her hands, full ranges of motion in her cervical spine, and no trigger points.  (Tr. 485.)  In her upper and lower extremities, she had full range of motion, full strength, no atrophy, no sensory abnormality, and normal reflexes.  (Tr. 485–486.)  She also had full range of motion, no tenderness, and no trigger points in her thoracic and lumbar spines.  (Tr. 485.)  Dr. Caiati opined that "[f]rom a musculoskeletal point of view, sitting, standing, walking, reaching, pushing, pulling, lifting, climbing, and bending are unrestricted."  (Tr. 486.)

## D.  **The ALJ's Decision**

ALJ Waldman issued his decision on January 29, 2016 applying the five-step process described below, pursuant to 20 C.F.R. § 404.1520.  (Tr. 15–28.)  At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity from her amended alleged onset date through her date last insured.  (Tr. 17.)  At step two, the ALJ found that only Plaintiff's migraine headaches was severe.  (Tr. 17–18.)  At step three, the ALJ determined that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of any of the regulations' listed impairments.  (Tr. 23.)  Specifically, the ALJ considered the listed impairments under Section 11.00 for neurological disorders.  (Id.)

The ALJ then addressed step four, first considering Plaintiff's RFC.  An RFC determination identifies what work a claimant can still perform, despite her limitations.  See C.F.R. § 404.1545(a).  The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels, except that Plaintiff would be off-task 8% of the workday and would miss one day of work in a one-month period.  (Tr. 23–25.)  In making this determination, ALJ Waldman gave significant weight to Dr. Fulco's opinion that Plaintiff has no exertional limitations, but only some weight to Dr. Fulco's opinion that Plaintiff would be off-task 25% of the workweek.  (Tr. 27.)  The ALJ also gave significant weight to Dr. Caiati's opinion that Plaintiff had no functional limitations.  (Id.)  Finally, the ALJ afforded less weight to Dr. Stein's and Dr. Mehta's opinions regarding Plaintiff's purported functional limitations.  (Tr. 22–23, 27–28.)

Upon consideration of the evidence, ALJ Waldman found that the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible.  (Tr. 25.)  ALJ Waldman found that the medical evidence in the record, including

Plaintiff's treatment notes, the opinions from Dr. Caiati and Dr. Fulco, and Plaintiff's conservative treatment failed to support her allegation of disability that would preclude all vocational activity. (Tr. 25–27.)

At step five, the ALJ relied on the testimony of a vocational expert to determine that Plaintiff's RFC would not preclude performance of her past relevant work as a sleep technician or as a medical assistant. (Tr. 28.) Accordingly, ALJ Waldman found that Plaintiff was not disabled as defined in the Act from August 6, 2014 through December 31, 2015. (Id.)

## II. DISCUSSION

### A. Social Security Disability Standard

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an administrative law judge ("ALJ") determines disability. See 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find his disabled if (5) there is not another type of work the claimant can do.

Brugess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)).  At step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his prior type of work.  20 C.F.R. § 404.1520(a)(4)(iv).  The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do."  Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

## B.  **Scope of Review**

In reviewing a denial of disability benefits by the Social Security Administration ("SSA"), it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'"  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvior v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)).  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'"  Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)).  Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it."  State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990).  An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force."  Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted in cases where the Commissioner has failed to provide a full and fair hearing, to make sufficient findings, or to have correctly applied the law and regulations.  See Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999); see also 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

## C. Analysis

Plaintiff claims ALJ Waldman erred by: (1) finding that her fibromyalgia is not a medically determinable impairment; (2) misstating Dr. Fulco's testimony in his decision; (3) improperly weighing the medical opinion evidence in the record; and (4) improperly evaluating her credibility at the hearing.  Plaintiff's arguments are unavailing.

### 1. The ALJ's Determination that Plaintiff's Fibromyalgia is Not a Medically Determinable Impairment is Supported by Substantial Evidence

An impairment is "severe" if it "significantly limits [a plaintiff's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  "When the parties disagree over the effect of the ALJ's failure to include a condition at step two, resolution of this issue comes down to a question of whether there was substantial evidence to support the ALJ's conclusion that [the omitted condition] should not be included as a severe impairment."  Eralte v. Colvin, No. 14-CV-1745, 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014) (quotations omitted).  "[T]he severity prong is intended as a *de minimis* standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity.'"  Vicari v. Astrue, No. 05-CV-4967, 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting Bowen v. Yuckert, 482 U.S. 137, 158 (1987)).

11

Social Security Ruling ("SSR") 12-2p provides that an individual has a medically determinable impairment of fibromyalgia if a physician has diagnosed the individual with fibromyalgia, the diagnosis is not inconsistent with the other evidence in the record, and the medical evidence meets the criteria set forth in *either* Section II.A or Section II.B.

> Section II.A of SSR 12-2p requires:
>
> 1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination . . . . The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist. . . .
>
> 3. Evidence that other disorders that could cause the symptoms or signs were excluded. . . .

2012 WL 3104869, at *2–3 (July 25, 2012).

> Similarly, Section II.B of SSR 12-2p requires:
>
> 1. A history of widespread pain (see section II.A.1.);
>
> 2. Repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
>
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.).

Id.

Both Section II.A and Section II.B require objective medical evidence of a history of widespread pain in all quadrants of the body that has persisted for at least three months and evidence that the other disorders that could cause the symptoms or signs were excluded. The only difference between the two sections is that Section II.A requires evidence of at least eleven positive tender points on physical examination bilaterally and both above and below the waist, whereas

Section II.B requires evidence of repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions. Evidence establishing either set of criteria leads to the conclusion that a person has a medically determinable impairment of fibromyalgia.

Here, ALJ Waldman determined that Plaintiff's fibromyalgia was not a medically determinable impairment because "the record does not show [] the requisite amount of tender points, widespread pain, or repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, as described under section II.A or section II.B of SSR 12-2p." (Tr. 22.) In reaching this conclusion, ALJ Waldman gave significant weight to the non-examining medical expert, Dr. Osvaldo Fulco, "because of his program knowledge and [that] [he] had the opportunity to consider the medical record in its entirety" and because his opinion was "well-supported by and consistent with the medical record." (Id.)

Plaintiff contends that ALJ Waldman erred in determining that her fibromyalgia is not a medically determinable impairment because the record demonstrates that she meets the criteria set forth in Section II.A and Section II.B. Specifically, she claims that the evidence in the record demonstrates that she has (i) a history of widespread pain in all quadrants of the body which has been present for at least three months, (ii) at least eleven positive bilateral tender points, and (iii) repeated manifestations of more than six fibromyalgia symptoms, including brain fog, depression, numbness, fatigue, insomnia, headaches, joint stiffness, and tender points. (Pl.'s Mem. 20–22.) For the following reasons, ALJ Waldman's step two determination is supported by substantial evidence.

At step two, ALJ Waldman adequately explained how the evidence in the record did not support a finding that Plaintiff had a history of widespread pain in all quadrants of her body for at least three months. (See Tr. 21–22.) This finding alone is sufficient to uphold ALJ Waldman's

determination at step two, as objective evidence demonstrating a history of widespread pain is a requirement for *both* SSR 12-2p Section II.A and Section II.B.  Thus, Plaintiff's argument that the evidence in the record shows that she has repeated manifestations of more than six fibromyalgia symptoms and the requisite amount of tender points is irrelevant.[3]  As explained below, ALJ Waldman's finding that Plaintiff's fibromyalgia is not a medically determinable impairment is supported by substantial evidence.

Plaintiff argues that "[t]he record unequivocally establishes the 3-month durational requirement – Ms. Haglich began complaining of widespread pain in August 2010."  (Pl.'s Mem. 20.)  However, the evidence cited by Plaintiff are treatment notes that reflect her subjective complaints of severe pain in her upper and lower extremities, (see Tr. 309, 424–425, 428–431, 441–442, 445–446, 449–450, 453–456, 461–468, 482–483, 503, 521–530, 571–576), rather than treatment notes indicating that, upon physical examination, Plaintiff does, in fact, have pain all quadrants of her body which has been present for at least three months as required by SSR 12-2p.  Even though treating physician Dr. Stein, in a fibromyalgia residual functional capacity questionnaire dated 7/22/15, indicated that Plaintiff had pain in the lumbosacral spine, cervical spine, shoulders, arms, hips, and legs, (see Tr. 498–502), ALJ Waldman found that this finding was not supported by his treatment notes. (Tr. 21.)  Indeed, all of Dr. Stein's treatment notes in the record state that, upon physical examination, Plaintiff has no pain in her upper and lower extremities.  (See Tr. 521–22, 524–30, 573, 574.)  Additionally, an assessment from neurologist

---

[3] In any event, ALJ Waldman's determination that the medical evidence in the record does not demonstrate that Plaintiff has the requisite amount of tender points is also supported by substantial evidence.  While treating physician Dr. Kavini Mehta did diagnose Plaintiff with fibromyalgia, (see Tr. 469, 474–75, 514), Dr. Mehta never specified that Plaintiff had the requisite eleven positive tender points bilaterally both above and below the waist.  Rather, in a treatment note dated November 14, 2013 (which is before Plaintiff's alleged onset date), Dr. Mehta noted only ten bilateral tender points.  (See Tr. 470.)  Similarly, treating physician Dr. Bruce Stein also diagnosed Plaintiff with fibromyalgia, (see Tr. 498, 593, 522, 571), but never specified that Plaintiff had eleven positive tender points—only that Plaintiff had "multiple" tender points in a fibromyalgia residual functional capacity questionnaire dated July 30, 2015.  (Tr. 498.)

Dr. Farrugia dated 5/5/14 indicates that Plaintiff has severe pain in her upper extremities without mention to whether she also has pain in her lower extremities. (Tr. 479–480.)

Thus, because evidence in the record does not indicate that Plaintiff has widespread pain in all quadrants of the body which has been present for at least three months, ALJ Waldman's determination that Plaintiff does not meet either SSR 12-2p Section II.A or Section II.B is supported by substantial evidence.

**2.    The ALJ's Misstatement of the Medical Expert's Testimony is Harmless Error**

Plaintiff argues that remand is warranted because ALJ Waldman misstated medical expert Dr. Fulco's testimony in his decision. (Pl.'s Mem. 22–24.) At the supplemental hearing, Dr. Fulco testified that he believed Plaintiff would be off task for 25% of the workweek, not a workday. (Tr. 132.) In his decision, however, ALJ Waldman stated: "Dr. Fulco testified that [Plaintiff] would be off task 25 (averaging 5% per day) percent of the workweek, not the workday." (Tr. 25) (emphasis added). Plaintiff correctly points out that Dr. Fulco never testified that Plaintiff would be off task an average of 5% per workday.

However, Plaintiff fails to identify the relevance of this misstatement of Dr. Fulco's testimony and, in any event, this misstatement was inconsequential. ALJ Waldman only gave "some weight" to "Dr. Fulco's opinion that [Plaintiff] would be off task during part of the workweek, but not to the extent determined by Dr. Fulco" and ultimately determined that Plaintiff retained the RFC to work at all exertional levels with a limitation that she would be off-task 8% of the workday. (Tr. 23, 27.) If ALJ Waldman actually construed Dr. Fulco's opinion to mean that Plaintiff would be off-task 5% each work day, rather than 25% per workweek, then the ALJ, who limited Plaintiff's RFC to being off-task 8% per workday, would not have characterized Dr.

Fulco's opinion as too restrictive.[4]    Thus, ALJ Waldman must have construed Dr. Fulco's testimony correctly in determining Plaintiff's RFC.

### 3.  The ALJ Properly Weighed the Medical Opinion Evidence in the Record

Plaintiff also argues that ALJ Waldman erred by (1) not giving the greatest weight to the opinions of his treating physicians, and (2) improperly discounting the portion of Dr. Fulco's opinion that Plaintiff would be off task 25% of the workweek.  (Pl.'s Mem. 24–27.)

An ALJ's decision regarding the weight to be accorded to each medical opinion in the record and how to reconcile conflicting medical opinions is governed by the treating physician rule.  20 C.F.R. § 404.1527(c)(2).  According to the treating physician rule, if a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ will credit that opinion with "controlling weight." 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

However, an ALJ may discount a treating physician's opinion when that opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record, or the evidence otherwise supports a contrary finding. See 20 C.F.R. § 404.1527(c).  The ALJ is required to give "good reasons" in support of the determination. See Schaal v. Apfel, 134 F.3d 496, 503–04 (2d Cir. 1998).  Additionally, the opinions of consultative medical examiners and non-examining medical experts can override the opinions of treating physicians if those opinions are supported by substantial evidence in the record. Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995).

---

[4] Being off-task 25% of a 40-hour workweek amounts to being off-task 10 hours per workweek, whereas being off-task 5% per workday amounts to being off-task 2 hours per workweek.  Being off-task 8% per workday amounts to being off-task approximately 3.2 hours per workweek.

ALJ Waldman gave sufficiently good reasons for discounting the treating physician opinions from Dr. Mehta. Dr. Mehta provided two medical source statements on 7/19/11 and 1/2/14. On 1/2/14, Dr. Mehta opined that Plaintiff can stand or walk less than two hours in an eight-hour work day, sit less than six hours in an eight-hour work day, and cannot push or pull more than five pounds. (Tr. 474–478.). On 7/19/11, Dr. Mehta opined that Plaintiff can lift up to ten pounds, sit up to eight hours in an eight-hour day, stand or walk up to four hours in an eight-hour day, has moderate limitations for reaching, has attention and concentration issues, and cannot push, pull, kneel, bend, or stoop. (Tr. 514–520). ALJ Waldman accorded "less weight" to these opinions because, inter alia, they were not consistent with the record as a whole or Plaintiff's testimony regarding her walking ability and daily activities. (Tr. 22.) ALJ Waldman also discounted the 7/19/11 opinion because it was rendered over four years before the amended alleged onset date. (Tr. 22.)

These are sufficiently good reasons to discount Dr. Mehta's opinions. Contrary to Dr. Mehta's opinion regarding Plaintiff's functional limitations, Plaintiff testified that she had no limitations walking and that she could, among other things, drive, cook, grocery shop, ride her bike around the neighborhood, and travel. (Tr. 86–94.) Dr. Stein's treatment notes also indicate no restriction in Plaintiff's range of motion, tenderness to palpation in the cervical, thoracic, and lumbar spines, and no tenderness or pain in the upper and lower extremities. (See Tr. 503–505, 521–530, 571–575). Thus, it was permissible for ALJ Waldman to discount Dr. Mehta's opinions because they were contradicted by substantial evidence in the record.[5]

---

[5] Plaintiff contends that there are large gaps in the medical record and that ALJ Waldman's failure to develop the record warrants remand. (Pl.'s Mem. 26.) At the hearing, Plaintiff's counsel indicated: "So, as far as the fibromyalgia, I will attempt to develop the records as further as possible; but I do think they are what they are at this point." (Tr. 80.) Accordingly, ALJ Waldman held the record open to obtain additional evidence. (Tr. 97.) It appears that Plaintiff did not supplement the record with additional treatment notes from her treating physicians. Thus, ALJ Waldman did not err, as he gave Plaintiff the opportunity to fill in the gaps of her medical history.

The ALJ also gave sufficiently good reasons for discounting Dr. Stein's opinion. In a fibromyalgia residual functional capacity questionnaire dated 7/22/15, Dr. Stein opined that: Plaintiff can lift or carry less than ten pounds; sit, stand, or walk less than two hours in an eight hour workday; can never twist, stoop, crouch, squat, or climb; can occasionally look down, up, turn the head to the right or left; or hold the head in a static position; is incapable of even low stress work; would constantly experience interference from attention and concentration; take unscheduled fifteen minute breaks every half hour; has limited ability to reach and perform fine manipulations; and miss more than 4 days of work in a month. (Tr. 498–501.) ALJ Waldman accorded "less weight" to Dr. Stein's opinion because it was not consistent with his own treatment notes. (Tr. 22–23, 27–28.)

These are sufficiently good reasons to discount Dr. Stein's opinion. As previously noted, Dr. Stein's own treatment notes indicate no restriction in Plaintiff's range of motion, tenderness to palpation in the cervical, thoracic, and lumbar spines, and no tenderness or pain in the upper and lower extremities. (See Tr. 503–505, 521–530, 571–575). ALJ Waldman also noted that Plaintiff's conservative treatment consisted of medication management and Botox injections, and the Plaintiff reported significant improvement in her migraine headaches. (Tr. 27.) And, as previously noted, other evidence in the record, such as Plaintiff's testimony regarding her daily activities, contradicts Dr. Stein's opinion. Thus, it was permissible for ALJ Waldman to discount Dr. Stein's opinion because it was contradicted by substantial evidence in the record.

On the other hand, ALJ Waldman gave significant weight to medical expert Dr. Fulco's opinion that Plaintiff had no exertional limitations, but only some weight to Dr. Fulco's opinion that Plaintiff would be off-task 25% of the workweek. (Tr. 72.) Plaintiff argues that ALJ Waldman improperly discounted the portion of Dr. Fulco's opinion regarding how long Plaintiff would be

off task during the workweek. (Pl.'s Mem. 27.) However, ALJ Waldman provided good reasons for discounting this portion of Dr. Fulco's opinion while giving the rest of his opinion significant weight.

At the supplemental hearing, Dr. Fulco was asked to opine on how much time Plaintiff would be off-task during the workweek in light of Dr. Farrugia's assessment of Plaintiff having "migraine headaches, occurring daily at least four hours with nausea, photophobia." (Tr. 496.) Dr. Fulco opined that Plaintiff may be off task 25% of the workweek due to her migraines. (Tr. 132.) ALJ Waldman only gave some weight "to Dr. Fulco's opinion that [Plaintiff] would be off task during part of the workweek, but not to the extent determined by Dr. Fulco." (Tr. 27.) He reasoned that this part of Dr. Fulco's opinion was inconsistent with Plaintiff's testimony regarding her daily activities and the other medical evidence in the record showing limited exertional limitations. These are sufficiently good reasons, supported by substantial evidence in the record, to discount a portion of a medical expert's testimony.

For these reasons, the ALJ did not err by discounting the opinions of Dr. Mehta and Dr. Stein and a portion of Dr. Fulco's testimony.[6] ALJ Waldman's evaluation of the medical evidence in the record is supported by substantial evidence.

### 4. The ALJ Properly Evaluated Plaintiff's Credibility

Finally, Plaintiff contends that ALJ Waldman did not properly evaluate her credibility. (Pl.'s Mem. 28–30.)

"A finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligent plenary review of the record." Williams v. Bowen, 859 F.2d 255, 260–61 (2d

---

[6] Although Plaintiff argues that Dr. Farrugia's assessment "[was] consistent with the record as a whole, and [her] assessments should have been given controlling, or at least, significant weight[,]" the record does not contain medical opinion from Dr. Farrugia. (Pl.'s Mem. 27.)

Cir. 1988). The ALJ must also "assess subjective evidence in light of objective medical facts and diagnoses." Id. at 261. When a plaintiff's statements about her symptoms and limitations suggest a greater restriction of function than is demonstrated by the objective medical evidence, the Commissioner considers the following factors that are relevant in assessing a claimant's credibility: (i) the claimant's daily activities, (ii) the location, duration, frequency, and intensity of pain or other symptoms, (iii) the precipitating and aggravating factors, (iv) the type, dosage, effectiveness, and side effects of medication, (v) treatment other than medication used for relief of paid or other symptoms, (vi) any measures used to relieve pain or other symptoms, and (vii) other factors concerning functional limitations and restriction due to pain or other symptoms. 20 C.F.R. § 404.1529(c). Even if an ALJ does not explicitly recite these factors, "[t]he ALJ's credibility determination must be supported by substantial evidence." Leavitt v. Astrue, No. 08-CV-731S, 2010 WL 419970, at *4 (W.D.N.Y. Jan. 29, 2010); see Cichocki v. Astrue, 534 F. App'x 71, 75 (2d Cir. 2013) ("Although the ALJ did not explicitly recite the seven relevant factors, his credibility determination was supported by substantial evidence in the record."). Additionally, SSR 13-3p provides:

> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

2017 WL 5180304, at *10 (2017).

Here, ALJ Waldman determined that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons

explained in this decision." (Tr. 25.) Specifically, after considering Plaintiff's testimony regarding her ability to cook, clean, do laundry, go shopping, take care her child, shower, bathe, dress herself, go out for walks, socialize with friends, drive, bike around the neighborhood, and travel every year, ALJ Waldman found that "[Plaintiff's] reported daily activities are greater than one might expect, given her allegations of an inability to do any work." (Tr. 27.) This reasoning is sufficiently specific and is supported by substantial evidence in the record. The ALJ necessarily considered the treatment notes from Plaintiff's treating physicians, the opinions from Dr. Fulco, and Dr. Caiati, and other objective medical evidence in the record predating Plaintiff's amended alleged onset date in evaluating Plaintiff's credibility. (See Tr. 25–26.) ALJ Waldman also considered the factors listed in 20 C.F.R. § 404.1529, noting that Plaintiff's daily activities, conservative course of treatment, and the fact that she reported improvement in her symptoms. (Id.) Contrary to Plaintiff's assertion, it is routine for an ALJ to consider her daily activities, her course of treatment, and the fact that she experienced improvement with treatment. See 20 C.F.R. § 404.1529(c). Thus, ALJ Waldman's credibility determination is supported by substantial evidence in the record.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings and GRANTS the Commissioner's cross-motion. The Clerk of the Court is directed to enter judgment in favor of defendant and close the case.

**SO ORDERED.**

Dated: September 30, 2019
Central Islip, New York

                                       /s/ (JMA)                     
                                      JOAN M. AZRACK
                                      UNITED STATES DISTRICT JUDGE